DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas, Juvenile Division, which granted permanent custody of three minor children to the Erie County Department of Job and Family Services and terminated the parental rights of appellant, Sarah S. For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} Appellant, Sarah S., is the biological mother of Nina S. (born May 13, 1989), Sarah S. (born February 12, 1992) and Salina S. (born March 27, 1993). On October 27, 1999, the Erie County Department of Human Services ("ECHS") filed a complaint in dependency and neglect alleging that appellant utilized her children in criminal activities and then abandoned them at a store. On December 22, 1999, the juvenile court adjudicated the children neglected and dependent and awarded temporary custody to ECHS. Appellant's case plan provided her with substance abuse treatment.
 {¶ 3} On July 19, 2001, ECHS filed a motion for permanent custody of the children. The agency argued that its request should be granted because the children could not be placed with either parent now or within a reasonable period of time and "should not be so placed and that such an order is in the [children's] best interest." A trial commenced on June 11, 2002. ECHS worker Julie Kyer testified that her agency first became involved with appellant's children in 1999 when appellant took them to a Meijer's store to steal shoes. Store personnel discovered appellant's plan and called the police. When the police arrived, appellant fled the store leaving her children behind. Appellant was ultimately charged with child endangering and petty theft. Appellant failed to complete any of the substance abuse treatment programs recommended by ECHS during the two and one-half years the children were in its temporary custody. Also during that time period, she twice tested positive for cocaine.
 {¶ 4} On November 26, 2002, the juvenile court terminated appellant's parental rights and awarded permanent custody of the children to ECHS. The pertinent portion of the court's decision reads as follows:
 {¶ 5} "Mother has obviously struggled with her drug dependence/abuse issues. She has been offered extensive services for her drug issues during the pendency of the case and these efforts have completely failed (three times) up to her in-patient treatment at Compass House. While her engagement of in-patient treatment is admirable, like her previous efforts, follow through is quite questionable. Specifically, Mother failed to complete her in-patient treatment and was released from it. While her release was for medical reasons, these reasons are unexplained. The medical excuse for her release could have been easily explained by Mother simply providing a release, which she failed to do. Also, unexplained are the treatment plans since Mother left in-patient treatment. The court is without any idea of the status of Mother's continued treatment and her history of failure compels the court to conclude that this issue yet remains unresolved in Mother's life.
 {¶ 6} "In addition, Mother's visits with her children were highly disruptive and fairly sporadic. While Mother did attend parenting classes she has exhibited a lack of ability to put all of the pieces together to reunify her family in a timely manner. The very issues that Mother exhibited and that necessitated Court involvement in the first place are still present and unresolved or explained. The children, on the other hand, have flourished while in foster care. They have improved grades, addressed issues of self-esteem and age appropriate behavior. Lastly, the children are adoptable.
 {¶ 7} "Pursuant to ORC 2151.414(B), clear and convincing evidence was presented that the [children were] in agency placement for more than 12 of the last 22 consecutive months."
 {¶ 8} In her sole assignment of error, appellant contends that the decision terminating her parental rights was against the manifest weight of the evidence and constitutes an abuse of discretion.
 {¶ 9} R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency. The statute requires the court to find, by clear and convincing evidence, (1) the existence of one of the factors enumerated in (B)(1), and (2) an award of permanent custody to be in the best interest of the child. R.C. 2151.414 states in pertinent part:
 {¶ 10} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 11} "***
 {¶ 12} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 13} This court has held that "*** by enacting R.C.2151.414(B)(1)(d), the legislature intends that the mere amount of time in which a child is in the continuous care of a public or private children services agency is sufficient to terminate a parent's right to raise her child and to award permanent custody to the requesting agency."In re Miqueal M, 6th Dist. No. L-02-1020, 2002-Ohio-3417, See also, In reC.N., et. al, 8th Dist. No. 81813, 2003-Ohio-2048.
 {¶ 14} The record in this case supports the court's finding that the children were in agency placement for more than 12 of the last 22 consecutive months. The children were placed in the temporary custody of the agency on November 8, 1999, and they remained in its custody until the time of trial in June 2002. As for the determination regarding the best interest of the children, R.C. 2151.414(D) instructs the court to consider all relevant factors, including, but not limited to, the following:
 {¶ 15} "(1)The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply."
 {¶ 20} The evidence established that the children were initially placed with appellant's parents. The children were removed from their maternal grandparents home when the children's grandfather, while intoxicated, waved a gun at one of the children. This incident led to police intervention. Next, the children were placed with their paternal grandparents. That placement lasted approximately four months. It was terminated at the request of the paternal grandparents who felt "they could not handle it anymore." In addition, the paternal grandparents were not cooperating with the case plan that required the children to go to counseling.
 {¶ 21} Caseworker Tara Timar testified that she explored the possibility of placement with the child's maternal aunt, Peggy P. Peggy P. lived in a home with her husband and three teenage sons. The home, however, was deemed unsuitable. Peggy P. and her husband slept on the front porch of the home. Two of her teenage sons slept on couches and one of her sons slept on a mattress on the floor. Clutter was strewn throughout the home. There were no dressers or clothes on hangers. Peggy P. planned to house appellant's children in the upstairs of the home. The door to the upstairs was padlocked. When asked why, Peggy P. explained that her husband put the lock on the door so that her sons could not steal her husband's power tools. The padlock had to be removed with bolt cutters. When Timar started up the stairs she noticed that the first step was missing. The room for the girls had no electricity and no heat. A window was broken and there were numerous holes in the walls.
 {¶ 22} Timar further testified that she had concerns about the behavioral problems of Peggy P.'s sons. Peggy P. told her that the holes in the walls were the result of her son Phillip purposely kicking the walls when he was angry. Peggy P.'s son Dominic had been charged with a carrying a concealed weapon at school and kicking in the door to a local business. Dominic was frequently absent from school. Both Philip and Dominic ran away from home and stole bicycles.
 {¶ 23} Following her home visit, Timar advised Peggy P. that if the structural problems with the home were fixed she may be reconsidered for placement. Two months later, Peggy P. contacted Timar to tell her some repairs had been made but they were not completed. Timar testified that she never again heard from Peggy P. before the trial began.
 {¶ 24} Peggy P. testified that she lives in Rockwood, Ohio, approximately 150 miles from Erie County. During the time appellant's children have been in temporary custody she has visited with them twice. She testified that since the initial inspection of her home, two of her sons have moved out. Her 16 year old son Phillip remains in the home. As for the upstairs of her home she testified that new walls have been put up, the step has been fixed and a light has been installed. She testified that she planned to get a set of bunk beds, a twin bed and three dressers for the room. Undoubtably, Peggy P.'s well-intentioned efforts to present a more suitable environment for the children were genuine, but regrettably belated.
 {¶ 25} The children's final placement was in foster care where they have done well in school and shown marked improvement with self-esteem and their social skills.
 {¶ 26} Based on the foregoing we conclude that clear and convincing evidence was presented to support the determination that permanent custody is in the best interest of the children. Accordingly, appellant's sole assignment of error is found not well taken.
 {¶ 27} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Erie County Common Pleas Court, Juvenile Division, is affirmed. Costs assessed to appellant.
 JUDGMENT AFFIRMED.